**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
―――――――――――――――――――――――――――――

**DIANA PAGAN,**

                    **Plaintiff,**          **18-cv-7012 (JGK)**

          **- against -**                   <u>**MEMORANDUM OPINION AND**</u>
                                            <u>**ORDER**</u>
**ANDREW M. SAUL, Commissioner of**
**Social Security,**

                    **Defendant.**
―――――――――――――――――――――――――――――

**JOHN G. KOELTL, District Judge:**

     This case involves a claim for Supplemental Security Income
("SSI") under Title XVI of the Social Security Act (the "Act").
The plaintiff, Diana Pagan, applied for SSI on March 5, 2015,
alleging disability based on Bipolar Disorder, depression, PTSD,
anxiety, trouble sleeping, and trouble controlling mood. The
Social Security Administration ("SSA") denied her initial
application for benefits on July 21, 2015. The plaintiff then
requested and received a hearing before an Administrative Law
Judge ("ALJ"). On June 1, 2017, the ALJ found the plaintiff not
disabled, and this became the final decision of the Commissioner
of Social Security ("the Commissioner") when the Appeals Council
denied the plaintiff's request for review on May 30, 2018. The
plaintiff then brought the present action on August 3, 2018,
seeking judicial review of the Commissioner's decision pursuant
to 42 U.S.C. §§ 405(g) and 1383(c)(3). The parties cross-moved

for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

Briefly, the undisputed facts in the record show the following. The plaintiff was born on December 15, 1968 and suffers from severe physical and mental impairments. She has a tenth grade education and has not had a job since 2012. Tr. 86, 210, 218. Over the past ten years, she has been chronically homeless and at the time of her SSI application, lived with relatives. Id. at 58, 574. The plaintiff was diagnosed with major depression, anxiety, and insomnia in 2009. Id. at 583. She attempted suicide in 2011 and was subsequently diagnosed with bipolar disorder and PTSD. Id. at 667, 493. In November 2013, the plaintiff checked herself into a hospital claiming depression and an inability to take care of herself. Id. at 804.

The plaintiff received mental health services from the Federal Employment and Guidance Services ("FEGS") from at least December 2013 through June 2015 and from the Jewish Board Family and Children Services (the "Jewish Board") from June 2015 at least to the date of the ALJ's decision. Id. at 473-584, 638, 932-1146. The plaintiff's treating psychiatrist at both institutions was Dr. Joseph Charles. The plaintiff has been prescribed a variety of anti-depressant, anti-psychotic, and anti-anxiety medications. Id. at 480, 484.

The plaintiff's application for SSI benefits in March 2015 claimed that she was disabled based on bipolar disorder, depression, PTSD, anxiety, trouble sleeping, and trouble controlling her mood. Id. at 92.

The Court referred this matter to Magistrate Judge Katharine H. Parker for a Report and Recommendation. Magistrate Judge Parker recommended that the Commissioner's motion be granted and that the plaintiff's motion be denied. The plaintiff objects to the Discussion and Section II, Parts A through F of the Magistrate Judge's Report and Recommendation. In particular, as relevant to this decision, the plaintiff objected to the Magistrate Judge's conclusion that the ALJ had developed the record as the ALJ was required to do. The plaintiff also objected to the Magistrate Judge's conclusion that found no error in the ALJ's decision to afford "little weight" to the opinions of Dr. Charles, the plaintiff's treating psychiatrist. The Magistrate judge concluded that, while the ALJ had failed to consider explicitly the relevant factors in assessing the weight to be afforded to the opinion of a treating doctor, the procedural error was "harmless."

After a de novo review of the plaintiff's objections to these conclusions by the Magistrate Judge, the ALJ's decision cannot be sustained because the ALJ should have developed the record, particularly by determining from Dr. Charles the medical

reasons for his conclusion that the plaintiff was unable to work, and the ALJ's cursory rejection of Dr. Charles's opinions without obtaining further medical information was legally erroneous. Therefore, for the reasons explained in more detail below, the plaintiff's motion for judgment on the pleadings is **granted**, the Commissioner's motion for judgment on the pleadings is **denied**, and the case is remanded to the Commissioner for further proceedings.

## I.

Pursuant to 28 U.S.C. § 636(b)(1)(C), any portion of a magistrate judge's Report and Recommendation to which objection is made is subject to de novo review. See, e.g., McClain ex rel. McClain v. Halter, No. 99-CV-3236, 2001 WL 619177, at *1 (S.D.N.Y. June 5, 2001). A court may set aside a determination by the Commissioner only if it is based on legal error or is not supported by substantial evidence in the record. See 42 U.S.C. §§ 405(g) and 1383(c)(3); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). "Substantial evidence is 'more than a mere scintilla,' it is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Santos v. Astrue, No. 12-CV-2075, 2013 WL 5462337, at *1 (S.D.N.Y. Sept. 30, 2013) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Lugo v. Berryhill, 390 F. Supp. 3d 453, 457 (S.D.N.Y. 2019).

**II.**

The standards governing entitlement to SSI benefits are well settled. A claimant seeking such benefits is considered disabled if the claimant is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).[1]

The analytical framework for evaluating SSI claims is defined by regulations of the Commissioner, which set forth a five-step inquiry. See 20 C.F.R. § 416.920. The Second Circuit Court of Appeals has described this five-step process as follows:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

---

[1] The statutory definitions of disability are identical under both Title II Disability Insurance and Title XVI Supplemental Security Income Programs. Compare 42 U.S.C. § 423(d) with 42 U.S.C. § 1382c(a)(3). Cases under 42 U.S.C. § 423 are cited interchangeably with cases under 42 U.S.C. § 1382c(a)(3). See Hankerson v. Harris, 636 F.2d 893, 895 n.2 (2d Cir. 1980). Furthermore, in making determinations with respect to disability for SSI, the provisions of Section 423(d)(5) shall apply. See 42 U.S.C. § 1382c(a)(3)(H)(i). Section 423(d)(5)(B) requires the Commissioner to "develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability." It also requires the Commissioner to "make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination, prior to evaluating medical evidence obtained from any other source on a consultative basis." Id.

>2. If not, the Commissioner considers whether
>the claimant has a "severe impairment" which
>limits his or her mental or physical ability
>to do basic work activities.
>3. If the claimant has a "severe impairment,"
>the Commissioner must ask whether, based
>solely on medical evidence, claimant has an
>impairment listed in Appendix 1 of the
>regulations. If the claimant has one of these
>enumerated impairments, the Commissioner will
>automatically consider [the claimant]
>disabled, without considering vocational
>factors such as age, education, and work
>experience.
>4. If the impairment is not "listed" in the
>regulations, the Commissioner then asks
>whether, despite the claimant's severe
>impairment, he or she has residual functional
>capacity to perform his or her past work.
>5. If the claimant is unable to perform his or
>her past work, the Commissioner then
>determines whether there is other work which
>the claimant could perform. The Commissioner
>bears the burden of proof on this last step,
>while the claimant has the burden on the first
>four steps.

Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000) (citation

omitted); see also Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir.

2008); Avila v. Astrue, 933 F. Supp. 2d 640, 649 (S.D.N.Y.

2013).

### III.

In this case, the ALJ found that the plaintiff met the

first two steps because the plaintiff had not engaged in

substantial gainful activity since March 2015, and the plaintiff

had the severe impairments of bipolar disorder, depression,

anxiety, and obesity. At step three, the ALJ found that none of

these impairments met any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04 and 12.06. At step four, the ALJ found that the plaintiff had the residual functional capacity ("RFC") to perform simple, routine, and unskilled work and could tolerate occasional interaction with the public. In analyzing whether the plaintiff had an impairment that met the appropriate listing and what the plaintiff's RFC was, the ALJ discussed the opinions of several doctors, including Consultative Examiners Fredelyn Enelberg Damari, Ph.D. and Peter Graham, M.D.; state agency physician S. Bhutwala, Ph.D.; Joseph Charles, M.D.; Saeid Tafreshi, M.D.; and Scott C. Schwartz, M.D. The ALJ also discussed the opinion of Zulma Rodriguez, LMSW, and the plaintiff's own testimony. At step five, the ALJ found that there existed jobs in the national economy that the plaintiff could perform and therefore, the plaintiff was not disabled. Tr. 30-38.

### A.

The plaintiff first objects to the Magistrate Judge's conclusion that the ALJ properly developed the record.[2]

---

[2] The Commissioner objects that the Court should not consider this objection to the Report and Recommendation because the plaintiff did not raise this objection before the Magistrate Judge. It is true that courts in this district generally do not consider arguments raised in objections to the Report and Recommendation that were not raised initially before the Magistrate Judge. See e.g., Lopez v. City of New York, No. 17-CV-3014, 2018 WL 1371164, at *2 (S.D.N.Y. Mar. 15, 2018). However, the plaintiff's objection is to the specific finding of the Magistrate Judge that the ALJ adequately developed the record, which the Magistrate Judge correctly noted

In a proceeding to determine whether a claimant is disabled, the ALJ has an affirmative duty to develop the administrative record. See Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982) (citations omitted); see also Guillen v. Berryhill, 679 F. App'x 107, 109 (2d Cir. 2017) (citing Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) ("[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history[.]")); Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508-09 (2d Cir. 2009). "This duty arises from the Commissioner's regulatory obligations to develop a complete medical record before making a disability determination, and exists even when . . . the claimant is represented by counsel." Avila, 933 F. Supp. 2d at 653 (citing Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996)). "When there are gaps in the administrative record . . . [the Second Circuit Court of Appeals has], on numerous

---

was the legal obligation of the ALJ. See Guerrero v. Comm'r of Soc. Sec., No. 16-CV-3290, 2017 WL 4084051, at *4 (S.D.N.Y. Sept. 13, 2017) (distinguishing between new arguments that protest the ALJ's findings with arguments that properly object to the Magistrate Judge's report); Abu-Nassar v. Elders Futures, Inc., No. 88-CV-7906, 1994 WL 445638, at *4 n.2 (S.D.N.Y. Aug. 17, 1994) (declining to consider new arguments not raised before the Magistrate Judge that were not submitted as objections). In any event, this objection is inextricably intertwined with the plaintiff's objection to the ALJ's failure to deal correctly with the opinions of the plaintiff's treating physician and is properly before the Court. See e.g., Yulfo v. Comm'r of Soc. Sec., No. 17-CV-00448, 2018 WL 2187385, at *13 (S.D.N.Y. Apr. 10, 2018) (noting that the treating physician rule is inextricably linked to the ALJ's duty to develop the record), report and recommendation adopted, No. 17-CV-448, 2018 WL 2186412 (S.D.N.Y. May 11, 2018).

occasions, remanded to the Commissioner for further development of the evidence." Pratts, 94 F.3d at 39 (alteration omitted).

The plaintiff received treatment for her conditions at FEGS from at least December 2013 to June 2015 and at the Jewish Board from June 2015 at least to the date of the ALJ's decision. Tr. 473-584, 638, 932-1146. Her treating psychiatrist at both centers, Dr. Joseph Charles, recorded various written reports in 2014 and 2015.[3] The record contains two Treating Physician Wellness Reports written by Dr. Charles, dated within twelve months of the plaintiff's application for SSI. In one report, dated June 9, 2014, Dr. Charles stated that the plaintiff was diagnosed with Bipolar Disorder, was very anxious, and had PTSD. Id. at 474. In the second report, dated November 17, 2014, Dr. Charles stated that the plaintiff had Bipolar II Disorder, PTSD, and experienced other symptoms including sadness, crying, yelling, insomnia, anhedonia, ideas of hopelessness, helplessness, worthlessness, suicidal ideas, racing thoughts, mood swings, irritability, and pressured speech. Id. at 484. In both reports, Dr. Charles opined that the plaintiff was unable to work for at least twelve months but did not provide a specific reason. Id. at 475, 485. The Commissioner points out

_____

[3] Some portions of the record indicate that the plaintiff's care with Dr. Charles and Ms. Zulma Rodriguez began as early as 2011. Tr. 473, 627. The defendant states that Dr. Charles began treating the plaintiff in February 2014. See Def.'s Br. at 3-4 n.1; Tr. 940-48. The last treatment notes from Dr. Charles are from October 2015. Tr. 981-82.

that in both reports, Dr. Charles failed to note any functional limitations, but in both forms, the section of the report that Dr. Charles checked to note that the plaintiff was "unable to work for at least 12 months" instructed the doctor to "check only one of the following" and only asked for further information if the doctor identified specific limitations. Id. In both reports, Dr. Charles also stated that the plaintiff's condition had not resolved or stabilized. Id. On October 25, 2014, Dr. Charles joined a report authored by Zulma Rodriguez, LMSW, that noted the plaintiff's diagnoses for "Bipolar Disorder II" and "Post-Traumatic Stress Disorder," as well as "Obesity" and "Homelessness" and noted that the plaintiff was "continuing to present anxious and feels that relaxation exercises don't work for her." Id. at 574, 581. The report noted moderate impairments in the areas of "Interpersonal/Social" and "Leisure (hobbies, inter[e]sts, etc)" and mild impairments in "Educational/Vocational," "Home Management," and "Personal/Health Management." Id. at 575. The report did not purport to assess some of the functions that the Commissioner uses in its "special technique" to evaluate mental impairments, namely: understanding, remembering or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. See 20 C.F.R. §§ 416.920a(a) and 416.920a(c)(3).

Subsequent reports from FEGS attested to the plaintiff's inability to work for twelve months. Tr. 487 (report dated December 22, 2014). In a detailed Wellness Report dated January 13, 2015, the Medical Director of FEGS reported the plaintiff was in psychiatric treatment, and that according to her treater the plaintiff "has been deemed not stable to work for the next 12 months, SSI is recommended." Id. at 502.

The Magistrate Judge found that the ALJ properly developed the record by obtaining the complete medical records from the plaintiff's medical providers, citing 42 U.S.C. § 423(d)(5)(B). However, the ALJ should have developed the record to determine the bases for Dr. Charles's conclusion in both of his Wellness Reports that the plaintiff had limitations that resulted in her inability to work for at least twelve months. "[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] sua sponte." Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998) (citation omitted); see also Rolon v. Comm'r of Soc. Sec., 994 F. Supp. 2d 496, 504 (S.D.N.Y. 2014) ("[I]f a physician's report is believed to be insufficiently explained, . . . the ALJ must seek clarification and additional information from the physician, as needed, to fill any clear gaps before rejecting the doctor's opinion.") (collecting cases); Moreira v. Colvin, No. 13-CV-4850, 2014 WL 4634296, at *5-*6 (S.D.N.Y. Sept. 15,

2014)(collecting cases); <u>Torres v. Comm'r of Soc. Sec.</u>, No. 13-CV-730, 2014 WL 406933, at *4-*5 (S.D.N.Y. Feb. 3, 2014) (error for ALJ to fail to ask for treatment notes and functional analysis from the plaintiff's treating physician).[4] Because the ALJ has an affirmative duty to develop the record and because this duty is heightened in cases involving mental illness, the ALJ erred in not seeking clarification from Dr. Charles with respect to the functional limitations caused by the plaintiff's psychological conditions. Accordingly, remand is appropriate so that the ALJ can seek additional information from Dr. Charles to clarify the gaps in the record related to Dr. Charles's medical opinions.

**B.**

The plaintiff also objects to Magistrate Judge Parker's conclusion that the ALJ's failure to explain adequately his

---

[4] The plaintiff cites 20 C.F.R. § 416.912(e) for the proposition that the ALJ must reach out to the treating source if evidence is inadequate for the Commissioner to determine whether the plaintiff is disabled. In 2012, the regulations were amended to delete Section 416.912(e) and to provide the ALJ with more discretion to determine the best way to resolve any insufficiency of evidence. <u>See Monroe v. Berryhill</u>, No. 17-CV-3373, 2018 WL 3912255, at *21 (S.D.N.Y. July 24, 2018), <u>report and recommendation adopted</u>, No. 17-CV-3373, 2018 WL 3910824 (S.D.N.Y. Aug. 15, 2018). Courts should apply the version of the regulation in effect when the ALJ adjudicated the claim. <u>See Lowry v. Astrue</u>, 474 F. App'x 801, 804 n.2 (2d Cir. 2012). However, even under the amended regulations, the first option for the ALJ to resolve an insufficiency in the record is to recontact the medical source. <u>See</u> 20 C.F.R. § 416.920b(b)(2)(i); <u>see also Candelaria v. Saul</u>, No. 18-CV-11261, 2020 WL 1000107, at *15 (S.D.N.Y. Feb. 14, 2020) (remanding to seek further medical information to develop the record in accordance with 20 C.F.R. § 416.920b), <u>report and recommendation adopted</u>, No. 18-CV-11261, 2020 WL 996441 (S.D.N.Y. Mar. 2, 2020).

rationale for not adhering to the treating physician rule was harmless procedural error.

The treating physician rule requires "deference to the views of the physician who has engaged in the primary treatment of the claimant" in determining the nature and severity of the claimant's impairment.[5] See Avila, 933 F. Supp. 2d at 653 (quoting Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008)). An ALJ must accord controlling weight to a treating physician's opinion when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. See 20 C.F.R. § 416.927(c)(2); Shaw, 221 F.3d at 134. When a treating physician's opinion is not afforded controlling weight, the Commissioner must apply various factors to determine what weight, if any, to give the opinion. See 20 C.F.R. §§ 416.927(c)(2)(i)-(ii) and 416.927(c)(3)-(6). The factors that the ALJ must explicitly consider include "(1) the frequen[cy],

---

[5] The Social Security Administration adopted regulations in March 2017 that effectively abolished the treating physician rule; however, it did so only for claims filed on or after March 27, 2017. See 20 C.F.R. § 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources . . . . [W]e will consider those medical opinions . . . together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate."). The plaintiff filed her claim before March 27, 2017. Thus, the treating physician rule under the previously existing regulations applies. See Tanya L. v. Comm'r of Soc. Sec., No. 17-CV-136, 2018 WL 2684106, at *4 n.1 (D. Vt. June 5, 2018) ("Because Plaintiff filed her claims before March 2017, however, the Court applies the treating physician rule under the earlier regulations (20 C.F.R. § 416.927), and not under the more recent ones (20 C.F.R. § 416.920c)."); see also Montes v. Comm'r of Soc. Sec., No. 18-CV-1182, 2019 WL 1258897, at *2 n.4 (S.D.N.Y. Mar. 18, 2019).

length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." Estrella v. Berryhill, 925 F.3d 90, 95-96 (2d Cir. 2019) (citations omitted) (the "Burgess factors" based on Burgess, 537 F.3d at 129).

The Commissioner is also required to explain the weight it gives to the opinion of a treating physician, with "good reasons." See 20 C.F.R. § 416.927(c)(2). A district court may remand without hesitation "when the Commissioner has not provided good reasons for the weight given to a treating physician[']s opinion." Morgan v. Colvin, 592 F. App'x 49, 50 (2d Cir. 2015) (quoting Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004) (per curiam)); see also Mejia v. Berryhill, No. 16-CV-6513, 2017 WL 3267748, at *4 (S.D.N.Y. July 31, 2017).

Where, as in this case, "mental health treatment is at issue, the treating physician rule takes on added importance." Bodden v. Colvin, No. 14-CV-08731, 2015 WL 8757129, at *9 (S.D.N.Y. Dec. 14, 2015). Mental health patients have good days and bad days; they "may respond to different stressors that are not always active. Thus, the longitudinal relationship between a mental health patient and her treating doctor provides the physician with a rich and nuanced understanding of the patient's health that cannot be readily achieved by a single consultative

examination." Id.; Rodriguez v. Astrue, 07-CV-534, 2009 WL 637154, at *26 (S.D.N.Y. March 9, 2009) ("The mandate of the treating-physician rule to give greater weight to the opinions of doctors who have a relationship with a plaintiff is particularly important in the mental-health context."); see also Davila v. Comm'r of Soc. Sec., No. 17-CV-6013, 2019 WL 1244661, at *5-6 (S.D.N.Y. Mar. 18, 2019).

The ALJ's perfunctory discussion of Dr. Charles's opinions is as follows:

> In 2014, Joseph Charles, M.D., opined that the claimant was unable to work for at least 12 months (may be eligible for long-term disability benefits). This opinion is given little weight. The opinion was given prior to the protective filing date. Furthermore, the final responsibility for deciding whether the claimant is "disabled" under the Social Security Act is reserved to the Commissioner.

Id. at 35 (citations omitted).

In deciding not to give the opinions of Dr. Charles controlling weight, the ALJ did not discuss whether the opinions were well-supported by acceptable clinical techniques. To the extent that the ALJ considered whether Dr. Charles's opinions were inconsistent with other substantial evidence in the record, he did not explain why the opinions of other consultative examiners were given greater weight than the opinions of Dr. Charles, who had treated the plaintiff for over two years and was a specialist in psychiatry. The Second Circuit Court of

Appeals has "frequently cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination," especially in the context of mental illness. Ferraro v. Saul, No. 18-3684, 2020 WL 1189399, at *3 (2d Cir. Mar. 12, 2020) (citation omitted) (remanding the case when the ALJ failed to provide good reasons for giving reduced weight to the plaintiff's treating physicians). "Cycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." Estrella, 925 F.3d at 97 (citations omitted).

The ALJ also did not give "good reasons" for giving the opinions of Dr. Charles "little weight." The ALJ did not even purport to consider the Burgess factors. Rather, the ALJ dismissed Dr. Charles's opinions because they were before the relevant time period and were limited to the opinion on disability, which is reserved to the Commissioner. The fact that the opinions were rendered before the plaintiff filed her application is irrelevant because the opinions were rendered within twelve months of the application, see 42 U.S.C. § 423(d)(5)(B), and commented on conditions expected to continue for twelve months, see 42 U.S.C. § 1382c(a)(3). While it is true

16

that Dr. Charles's opinion with respect to disability is
reserved to the commissioner, see 20 C.F.R. § 416.927(d),
Dr. Charles offered specific opinions about the plaintiff's
psychiatric conditions. The ALJ cannot rely on the lack of
opinions about the functional limitations from these psychiatric
conditions that caused Dr. Charles to conclude that they were
disabling when the ALJ failed to develop the record by
determining from Dr. Charles what functional limitations the
psychiatric conditions caused. The ALJ could not rely on the
gaps in the record when it was the ALJ's responsibility to fill
those gaps.

The Magistrate Judge correctly concluded that the ALJ's
cursory dismissal of the treating physician's opinions was
"procedural error" because it failed to consider explicitly the
factors required to be considered in explaining the lesser
weight afforded to the opinion of a treating physician. See
R. & R. 15. The Magistrate Judge concluded that this was
"harmless" error because Dr. Charles's opinions were not medical
opinions to which the ALJ owed deference and by engaging in an
independent evaluation of the medical records. But Dr. Charles
plainly reached medical opinions about the plaintiff's medical
conditions and their symptoms. While he did not tie those
medical conditions to the functional limitations that the ALJ
could have used to make a determination as to disability, the

17

error was made by the ALJ in failing to develop the record and cannot be considered to be harmless. The analysis of the ALJ's adherence to the treating physician rule is inextricably linked to the ALJ's failure to develop the record because "given the ALJ's affirmative duty to develop the administrative record, an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." Guillen, 679 F. App'x at 109 (citing Burgess, 537 F.3d at 129). The lack of detail for why Dr. Charles concluded that the plaintiff could not work for a period of twelve months was a gap in the record for which the ALJ should have first sought clarification. Furthermore, it is not for a Court to substitute its own judgment for the medical judgments of treating physicians, particularly when there are gaps in the record as to why a treating physician concluded that a claimant was unable to work for a twelve-month period. Cf. Rosa, 168 F.3d at 79. Nor should a court "affirm an administrative action on grounds different from those considered by the agency." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999).

The Commissioner argues that the ALJ is required to obtain additional evidence "only where the facts of the particular case suggest that further development is necessary to evaluate the claimant's condition fairly," Francisco v. Comm'r of Soc. Sec., No. 13-CV-1486, 2015 WL 5316353, at *11 (S.D.N.Y. Sept. 11,

2015) (citing Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir. 2013)), and that substantial evidence in the record already exists for the ALJ to evaluate the plaintiff's impairments. These cases are readily distinguishable. In Francisco, the court found that further development of the record would not have been material to determining whether the plaintiff had a severe impairment based on coronary artery disease and sarcoidosis, when the plaintiff testified to jogging and performed a job in the library in the relevant time period. See 2015 WL 5316353, at *13, *15. In Tankisi, the Court of Appeals held that the ALJ's failure to obtain a medical source statement did not require remand, when there was sufficient evidence to support the conclusion based on the "quite extensive" medical record that included an assessment of the plaintiff's limitations from at least one other treating physician. See 521 F. App'x at 34. In this case, it is clear that Dr. Charles was the plaintiff's treating physician for at least two years and that there was no other contrary statement from a treating physician as to the effect of the plaintiff's concededly severe psychological conditions on the functional requirements for work. Dr. Charles's opinions as to what limitations prevented the plaintiff from working was a gap in the record that the ALJ was under an obligation to fill in order to evaluate the plaintiff's application fairly.

For the reasons stated above, remand is appropriate so that the ALJ can clarify the bases for Dr. Charles's opinions and set forth good reasons for the weight he accords to Dr. Charles's opinions. See <u>Davila</u>, 2019 WL 1244661, at *8-*9; <u>Fridie v. Comm'r of Soc. Sec.</u>, No. 16-CV-09042, 2018 WL 1478133, at *10 (S.D.N.Y. Mar. 23, 2018); <u>Santos</u>, 2013 WL 5462337, at *6-*7.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons explained above, the Court declines to follow the Report and Recommendation of the Magistrate Judge. The plaintiff's motion for judgment on the pleadings is **granted.** This case is remanded to the Commissioner for further proceedings consistent with this Opinion. The Commissioner is free on remand to reconsider any other conclusions in light of the expanded record. The Commissioner's motion for judgment on the pleadings is **denied.** The Clerk is directed to enter judgment, to close this case, and to close all pending motions.

**SO ORDERED.**

**Dated:    New York, New York**
**           May 28, 2020**

                              /s/ John G. Koeltl
                        _____
                            **John G. Koeltl**
                        **United States District Judge**